# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| Puradigm, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>DBG Group Investments, LLC, ActivePure Technologies, LLC (f/k/a Aerus Holdings), ActivePure Medical, LLC, Aerus LLC, Aerus Franchising, LLC, ARS Home Solutions, LLC, Aerus Enterprise, LLC,<br>Vollara, LLC, and Vollara Concepts, LLC<br><br>       Defendants. | **JURY TRIAL DEMANDED** |

## COMPLAINT

### I. NATURE OF THE ACTION AND SUBJECT MATTER JURISDICTION

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271 et seq., for which this court has exclusive subject matter jurisdiction under 28 U.S.C. § 1338.

2. The claims arise out of Defendants' actions regarding the manufacture, sale, and offer for sale of air purifiers that embody claims of U.S. Patent No. 8,585,979 (the "'979 patent"). *See* Ex. A ('979 patent).

1

## II.  THE PARTIES

3. Plaintiff Puradigm, LLC ("Puradigm") is a Nevada corporation having its principal place of business at 111 C Street, Encinitas, California, 92024.

4. Puradigm is the sole owner of record of the '979 patent, including the rights of exclusivity and to damages for infringements.

5. Defendant DBG Group Investments, LLC, and the other named Defendants are all Delaware corporations having a principal place of business in Dallas County, Texas, at 5420 Lyndon B Johnson Freeway, Dallas, TX 75240.

6. The Defendants corporate structure is complex, however on information and belief, DBG Group Investments, LLC ("DBG") is the parent of all of the Defendants, which are directly or indirectly wholly owned by DBG and under common management and control.

7. Defendants share a common headquarters address, officers, and management team. The enterprise is engaged in the business of, among other things, making, selling, servicing, offering for sale, exporting, and using air purifiers that employ ultraviolet light ("UV") activated cells to generate ionized air particles.

8. A reasonable opportunity for discovery is likely to show that DBG is the ultimate owner and real party in interest for all of its subsidiaries in the air

purifier business, and in litigation involving the air purifier business, sues and has allowed itself to be sued as the real party in interest.

### III.   JURISDICTION AND VENUE

9. The Court has personal jurisdiction over Defendants because Defendants all have a headquarters location in this District, are registered to do business in Texas, and conduct their business from their Texas headquarters, including offering for sale, selling, and using the products accused of infringement in this suit or inducing others to do so.

10. Venue is proper under 28 U.S.C. §§ 1391(b), (c), (d), and/or 1400(b) because Defendants are subject to personal jurisdiction in this district, have committed acts of patent infringement in this district, and have a regular and established place of business in this district.

### IV.   BACKGROUND FACTS

11. Puradigm has been an innovator in the air purification industry since 2012, when it was formed to acquire and bring to market the ground-breaking technology of the '979 patent.

12. Puradigm manufactures and sells air purification products for residential use (https://www.puradigm.com/product/home/) and for various commercial and industrial applications, including professional facilities, food supply chain,

greenhouses, warehouses, and ice machines (https://www.puradigm.com/solutions/).

13. Defendants compete with Puradigm for the sale of air purification products, specifically photo-catalytic oxidation purifiers ("PCO purifiers").

14. Active PCO purifiers operate by passing air across a target surface that has been coated with a photo-catalyst. While air is flowing across the surface, ultraviolet ("UV") light is directed to the surface. The UV light interacts with the photo-catalyst, which causes ions to be generated. The ions are carried by the air flow, which conveys the ions to an indoor space, like a room. When the ions encounter pathogens, such as a viruses, the ions discharge, thereby attacking the pathogens.

15. The '979 patent represents an innovative and more efficient design for a PCO purifier. The design claimed by the '979 patent has been a commercial success for Puradigm, and is embodied in Puradigm's products, including the HVAC™, Puradigm Zone™, Puradigm PRO™, Puradigm COOL™, Puradigm GROW™, Puradigm FLOW™, and Puradigm HOME™ and HOME+™ air purifiers.

16. A reasonable opportunity for discovery is likely to show that Defendants copied Puradigm's patented design and have incorporated it into products sold under a variety of brand names and channels, including but not limited to

ActivePure Medical Guardian, ActivePure Portable, ActivePure Induct, Pure & Clean, Aerus, Beyond Guardian, Beyond by Aerus, Aerus Mobile, AP 500, Pure Cloud, Sanctuairy Mini and Mini EM, Guardian Air Home, Pet ReFresh, Guardian Heater, and Vollara Air & Surface Pro and Pro+. Discovery is likely to show additional brands used by Defendants. Generally, current accused models claim to use "ActivePure Technology®" (the "Accused Products")

17. Defendants make the Accused Products in the United States, and offer them for sale and sell them from their headquarters location in Dallas, Texas, to a variety of customers.

18. Defendants DBG Group Investments, LLC and ActivePure Technologies, LLC (f/k/a Aerus Holdings) direct and control the activities of the other Defendants, including operating a common website, contact platform, and sales lead distribution platform for the purpose of coordinating the sales activities of all the Defendants.

19. For example, the website "the aerusstore.com" advertises replacement parts, including parts for the Accused Products, under the Aerus brand, without any identification of which Defendant is responsible for the website.

20. The Defendants also operate a website, "activepure.com", that generically refers inquiries to "TrizCom PR", which is the same entity used to gather sales leads for all of Defendants' channels.

21. Defendants Vollara, LLC, and Vollara Concepts, LLC, are engaged in multi-level marketing ("MLM") and sell and offer to sell Accused Products to networks of associates throughout the United States, under the direction the corporate parents DBG Group Investments, LLC and ActivePure Technologies, LLC. Vollara, LLC has a website at vollara.com.

22. Defendant Aerus LLC makes the Accused Products in the United States, and either sells the Accused Products directly or through the other Defendants.

23. Aerus Franchising, LLC and ARS Home Solutions ("ARS") operate a franchisee network of franchised or owned retail locations across the United States, and sell Accused Products either from owned stores or on consignment from franchised retail operations to the residential and small business market.

24. Defendant ActivePure Medical, LLC offers for sale and sells Accused Products to healthcare providers.

25. Defendant Aerus Enterprise, LLC offers for sale and sells Accused Products to medium and large businesses and institutions, including government and educational institutions.

26. A reasonable opportunity for discovery is likely to uncover additional roles and entities in the DBG family for the manufacture, sale, and distribution of products covered by the '979 patent.

## V.     CLAIMS

### COUNT I - US PATENT NO. 8,585,979

27. Puradigm is the owner with the exclusive right to sue infringers and recover damages of the '979 Patent, a copy of which is attached as Exhibit A.

28. The '979 Patent duly issued on November 19, 2013 to Puradigm.

29. Puradigm has at all times material to this action, marked its own products covered by one or more claims of the '979 patent in accordance with 35 U.S.C. § 287.

30. Defendants make, use, sell, and offers for sale, and induce others to make, use, sell, and offer for sale, the Accused Products, which infringe one or more claims of the '979 patent.

31. Each of the Accused Products has at least one chamber that is used for generating ions. While the outer appearance of the Accused Products can vary from product to product, the construction of the chamber is substantially the same across the Accused Products.

32. For example and for illustration, all of the language of claim 1 of the '979 patent has a response in the Accused Products as shown, with each lettered clause corresponding to an allegation for which an Answer is demanded:

|   | Claim 1 of the '979 Patent | Accused Product |
|---|---|---|
| a | 1. An apparatus for ionizing air, the apparatus comprising: | Each Accused Product is an apparatus for ionizing air. |
| b | a chamber including: | ![Chamber images with arrows labeled "Chamber"] |

|   | Claim 1 of the '979 Patent | Accused Product |
|---|---|---|
| c | a top portion, | Top portion |
| d | a bottom portion, | Bottom portion |
| e | a first side including a first target comprising: a plurality of passages between an interior area of the chamber and an exterior area of the chamber, and | First side, first target |

| | Claim 1 of the '979 Patent | Accused Product |
|---|---|---|
| | a photo-catalytic coating on the plurality of passages; | |
| f | a second side opposite the first side and including a second target comprising: a plurality of passages between the interior area of the chamber and the exterior area of the chamber, and the photo-catalytic coating on the plurality of passages; | Second side, second target |

|   | Claim 1 of the '979 Patent | Accused Product |
|---|---|---|
| g | a first reflector arranged on the top portion of the chamber and configured to: | |
|   | reflect UV energy emitted along a dimension towards the first target from a UV emitter located within the chamber directly to the photo-catalytic coating of the first target, | The first reflector in each Accused Product is configured to reflect UV energy emitted along a dimension towards the first target from a UV emitter located within the chamber directly to the photo-catalytic coating of the first target. |

11

| | Claim 1 of the '979 Patent | Accused Product |
|---|---|---|
| h | wherein the first reflector is a specular UV reflector, and | The first reflector in each Accused Product is a specular UV reflector. *See* U.S. Pat. 9,867,897. |
| i | reflect UV energy emitted along a dimension towards the second target from the UV emitter directly to the photo-catalytic coating of the second target; | The first reflector in each Accused Product is configured to reflect UV energy emitted along a dimension towards the second target from the UV emitter directly to the photo-catalytic coating of the second target. |

| | Claim 1 of the '979 Patent | Accused Product |
|---|---|---|
| j | a second reflector arranged on the bottom portion of the chamber and configured to: | |
| k | reflect UV energy emitted along a dimension towards the first target from the UV emitter located within the chamber directly to the photo-catalytic coating of the first target, | The second reflector in each Accused Product is configured to reflect UV energy emitted along a dimension towards the first target from a UV emitter located within the chamber directly to the photo-catalytic coating of the first target. |

|   | **Claim 1 of the '979 Patent** | **Accused Product** |
|---|---|---|
| l | wherein the second reflector is a specular UV reflector, and | ![Specular UV Reflector]<br><br>The second reflector in each Accused Product is a specular UV reflector. *See also* U.S. Pat. 9,867,897. |
| m | reflect UV energy emitted along a dimension towards the second target from the UV emitter directly to the photo-catalytic coating of the second target; and | The second reflector in each Accused Product is configured to reflect UV energy emitted along a dimension towards the second target from the UV emitter directly to the photo-catalytic coating of the second target. |
| n | wherein the photo-catalytic coating is arranged to: receive UV energy directly from | Photo-catalytic coating in each Accused Product is arranged to receive UV energy directly from the UV emitter. |

| | Claim 1 of the '979 Patent | Accused Product |
|---|---|---|
| | the UV emitter, | |
| o | receive UV energy reflected from the first reflector, and | Photo-catalytic coating in each Accused Product is arranged to receive UV energy reflected from the first reflector. |
| p | receive UV energy reflected from the second reflector. | Photo-catalytic coating in each Accused Product is arranged to receive UV energy reflected from the second reflector. |

33. Puradigm has been damaged by Defendants' infringement, including lost sales. Puradigm could have supplied the market with Puradigm's own products, but for Defendants' infringement.

34. Defendants had constructive notice of the '979 patent due to Puradigm's compliance with the marking requirement of 35 U.S.C. § 287.

35. Defendants had actual notice of the '979 patent because a publication of an application related to the '979 patent was cited by a U.S. Patent and Trademark Office examiner during prosecution of Defendant DBG's U.S. Patent No. 9,867,897, and a publication of an application related to the '979 patent was cited by DBG in a child of DBG's U.S. Patent No. 9,867,897, and multiple publications of applications related to the '979 patent were cited in

15

DBG's European application EP3291844. DBG marked the Accused Products with U.S. Patent No. 9,867,897.

36. A reasonable opportunity for discovery is likely to show that Defendants were aware of Puradigm's patent rights through their interactions with their predecessor in interest, EcoQuest, or other entities in the industry.

37. A reasonable opportunity for discovery is likely to show that Defendants infringement was willful, in that it was with actual knowledge of the asserted patent or objectively reckless with willful blindness of Puradigm's patent rights.

## JURY TRIAL DEMAND

38. Puradigm requests a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

Puradigm respectfully requests that the Court find in its favor and against Defendants, and that the Court grant Plaintiff the following relief:

39. A judgment that the Defendants have infringed the '979 patent;

40. A judgment that the infringement was willful;

41. An order and judgment permanently enjoining the Defendants and its officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting concert with them, and their parents, subsidiaries, divisions, successors and assigns, from further acts of infringement of the '979 patent;

42. An order requiring Defendants to certify, every three months, that it is in compliance with the injunction and detailing the steps it has taken to ensure that the Accused Products are not being sold by Defendants or its associates, affiliates, franchisees, or in any other channel;

43. A judgment awarding Plaintiff all damages adequate to compensate for Defendants' infringement of the '979 patent, including lost profits;

44. A judgment awarding Plaintiff all damages, costs, and interest, including treble damages, based on any infringement found to be willful, under 35 U.S.C. § 284, with prejudgment interest;

45. An accounting of the Defendants' profits;

46. A judgment declaring this case to be exceptional and awarding Plaintiff its reasonable attorneys' fees under 35 U.S.C. § 285; and

47. Awarding Plaintiff such other and further relief as this Court deems just and proper.

Respectfully submitted,

January 27, 2023

/s/ Gregory C. Schodde
Christopher V. Carani (*Pro Hac Vice* to be filed)
Gregory C. Schodde (*Pro Hac Vice* to be filed)
Andrew Karp (*Pro Hac Vice* to be filed)
Scott P. McBride (*Pro Hac Vice* to be filed)
**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000

CCarani@mcandrews-ip.com
GSchodde@mcandrews-ip.com
AKarp@mcandrews-ip.com
SMcBride@mcandrews-ip.com
**Attorneys for Plaintiff,
Puradigm, LLC**